IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 28, 2024

**STATE OF TENNESSEE v. TIMOTHY WHITBY**

**Appeal from the Criminal Court for Morgan County**
No. 22-CR-25        Jeffery H. Wicks, Judge
_____

**No. E2023-00371-CCA-R3-CD**
_____

Following a bench trial, the trial court found the Defendant, Timothy Whitby, guilty of: vandalism under $1,000, a Class A misdemeanor; disorderly conduct, a Class C misdemeanor; and assault, a Class A misdemeanor.  The trial court sentenced the Defendant to concurrent sentences of eleven months and twenty-nine days on each count, suspended to supervised probation.  On appeal, the Defendant challenges the sufficiency of the evidence supporting his assault conviction, and the trial court's sentence of eleven months and twenty-nine days for his disorderly conduct conviction.  After review, we conclude that the trial court erred when it sentenced the Defendant to eleven months and twenty-nine days for his Class C misdemeanor disorderly conduct conviction.  Thus, we remand for entry of a sentence within the appropriate sentencing range.  We affirm the judgments in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed in Part, Affirmed in Part, and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and TIMOTHY L. EASTER, J., joined.

Kendall Stivers Jones, (on appeal), Assistant Public Defender – Appellate Division, Franklin, Tennessee; Kim Nelson, Public Defender; Joe Norris (at trial), Assistant Public Defender, Kingston, Tennessee, for the appellant, William Flynn.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Russell Johnson, District Attorney General; and Jonathan S. Edwards, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's October 2021 interaction with a school bus driver whose route ran along the road in front of the Defendant's residence. The bus stopped in front of the Defendant's home early in the morning because a tree had fallen onto the road. The sound of the bus alerted the Defendant's dogs, and the Defendant walked to the bus and began yelling and cursing at the bus driver and beating on the windows of the bus with a large flashlight. A Morgan County grand jury indicted the Defendant for vandalism under $1000, a Class A misdemeanor, (Count 1), disorderly conduct, a Class C misdemeanor, (Count 2), and assault, a Class A misdemeanor (Count 3).

## A. Trial

The Defendant's case proceeded to a bench trial during which the parties presented the following evidence: On the morning of October 4, 2021, Donald Poindexter, a Morgan County school bus driver, drove his normal route that brought him down Davis Road at approximately 6:50 a.m. He notified his boss, Keith Duncan, at 7:00 a.m. of a tree down across the road. Mr. Duncan advised Mr. Poindexter that a crew was en route to remove the tree. The bus was located in a curve and it was still dark, so Mr. Poindexter was unable to safely back the bus out of the road and had to wait for the crew to arrive. As soon as Mr. Poindexter finished speaking with Mr. Duncan, the Defendant ran out of the woods and began beating on the side of the bus door with a long metal flashlight. As he beat on the bus, he told Mr. Poindexter "to get the f-ing bus out of there or he was going to whoop [his] f-ing butt."

At the time, there were two high school students and one fourth grade student on the bus who began "freaking out." The fourth grade student began screaming and crying, and the high school students were upset, repeatedly asking Mr. Poindexter, "what's his problem[?]" Mr. Poindexter did not know if the Defendant was armed, so he secured the bus, locking the student door and the driver's window. The Defendant moved away from the bus door and began beating on the front windshield and then the driver's window. While beating on the driver's window, the Defendant said, "I'm going to take you out of that f-ing bus and kill your f-ing butt and feed you to my German Shepherd." Mr. Poindexter knew that the Defendant had a German Shepherd. Hearing the Defendant's threats, the students became alarmed, believing they were all going to be killed. Mr. Poindexter was afraid for himself and for the safety of the children. He removed the fire extinguisher from the bulkhead to make it more accessible in case the Defendant made entry.

Mr. Poindexter contacted his boss again by radio to request police assistance, and Mr. Duncan could hear the noise created by the Defendant. The Defendant stood on the

front bumper of the bus while hitting the front window. At some point, Steve Dobbins, who was a parent of one of the children waiting down the hill for the school bus, heard the commotion and came up the hill to see what was happening. When the Defendant saw Mr. Dobbins, he left. Mr. Dobbins cut up the tree and cleared it from the roadway.

The Defendant's interaction with the bus lasted for ten to fifteen minutes, throughout which he yelled at Mr. Poindexter and beat on the bus windows. Prior to this incident, the crossing arm that activated when the bus door was open, worked properly; however, following this incident, the crossing arm no longer extended. After finishing his bus route and delivering the students to their respective schools, Mr. Poindexter took the bus to "the mechanics" who fixed the crossing arm.

On cross-examination, Mr. Poindexter agreed that, after Mr. Dobbins cut up the tree, the Defendant "showed up and picked up a big part of it and went walking off with it." He denied seeing the Defendant assist Mr. Dobbins in cutting up the tree. Mr. Poindexter confirmed that there was no damage to the glass of the bus explaining that the school bus had "safety glass." Even though the bus had safety glass at the time of the incident, Mr. Poindexter did not know how much "pressure" the safety glass could withstand because, "[W]e never had a bus in that situation." Consequently, Mr. Poindexter prepared for the Defendant to make entry.

Morgan County School system Transportation Director Keith Duncan confirmed that three or four years earlier, Davis Road, where this incident occurred, had been "added" to the bus routes. He believed the addition of a route for buses was determined by the Road Superintendent or the County Road Board and then his office was notified of the change. In October 2021, approximately fifteen to twenty students were picked up on Davis Road and driven to school. On October 4, 2021, Mr. Poindexter notified Mr. Duncan on the bus two-way radio system of a tree down on Davis Road blocking the roadway. Mr. Duncan was attempting to request that the Road Superintendent send a crew to remove the tree from the roadway when Mr. Poindexter notified him via radio that a man was beating on the bus with a flashlight and threatening him. Mr. Poindexter's voice was escalated during this communication, and he sounded "nervous." Mr. Duncan immediately notified 911.

Mr. Duncan confirmed that, when the bus returned to school, the crossing arm, which normally lies against the bumper, no longer worked. The crossing arm was fixed "in house" by mechanics.

The Defendant and his wife testified in his defense. The Defendant's wife, Teresa Whitby, was asleep on the couch when her dogs' barking woke her up. The Whitbys owned five dogs, all of which were inside the house. Their female dog had just had a litter of puppies. When Ms. Whitby opened her eyes, she saw blinking lights through the window.

3

She walked over to the window and saw a bus, approximately 121 feet from their house, stationary on the road, and the Defendant walking across the yard toward the bus. The Defendant walked up to the bus and asked what the bus driver was doing. Ms. Whitby said that the Defendant, from his days working construction, often used expletives when he spoke and likely did so while speaking to the bus driver. Ms. Whitby never saw the Defendant touch or tap the bus at any time, and she never saw him climb onto the bumper of the bus. She did hear him say "[W]hat the heck are you doing[?]" The Defendant remained near the bus for less than five minutes and then walked back toward their house. The Defendant did not reach the house before Mr. Dobbins arrived, so the Defendant returned to the roadway to speak with Mr. Dobbins.

Ms. Whitby watched as the Defendant helped Mr. Dobbins get a chainsaw started and, after the tree was cut, drag part of the tree off the roadway and into their yard. The Defendant remained with Mr. Dobbins for "a little bit" and then started walking toward the house. Ms. Whitby walked out to ask the Defendant about the interaction when she saw the police arrive. The Defendant and Ms. Whitby walked out together to meet the police. According to Ms. Whitby, the police refused to speak with the Defendant or Ms. Whitby and told the Defendant he was under arrest for "touch[ing]" the bus.

On cross-examination, Ms. Whitby clarified that the Defendant was saying "what the f are you doing?" as he approached the school bus and was carrying a flashlight. She reiterated that the Defendant always used expletives because of his background in construction work. Ms. Whitby confirmed that the Defendant was aware that there were children on the school bus. Ms. Whitby agreed that the Defendant "scream[ed] . . . what the f**k are you doing[?]", but qualified that he did so only "a few times." She later denied that the Defendant was screaming, explaining that he had "a very loud voice just as his voice." She agreed that the Defendant's demeanor was not calm at the time of this incident. Ms. Whitby maintained that the Defendant was walking from their house to the road and not from the woods. She conceded that their yard had "a lot of trees." Ms. Whitby explained that the Defendant was upset because there was no reason for the bus to be stopped in front of their residence.

Ms. Whitby maintained that she never saw the Defendant touch the bus; however, when she picked him up from jail, the Defendant told her that he tapped on the driver's window to ask what the bus driver was doing. She explained that the police provided them with no opportunity to speak before the arrest, so she and the Defendant were unable to talk about the incident until after she picked him up from jail. The State played the body camera recording of the arrest. Ms. Whitby identified her voice and the Defendant's voice on the recording. The recording showed the Defendant and Ms. Whitby telling the police, multiple times, that the Defendant "tapped" on the bus driver's window to ask what the bus driver was doing. In the recording, the Defendant is agitated and belligerent in his

interactions with the police, threatening to sue the arresting officer and demanding the officer's information. After the State played the recording, Ms. Whitby maintained that she had been truthful in her testimony.

During redirect examination, Ms. Whitby reiterated that she never saw the Defendant tap on the bus window. She stated that the driver's window was on the far side of the bus from where she was watching. She acknowledged that she told the officers that the Defendant "tapped" on the bus window but explained that she was only repeating what the Defendant told the officers.

The Defendant testified that he became aware of the school bus when his dogs "alerted an intruder." The Defendant had been awake for thirty hours "birthing puppies," and just fallen asleep when his four dogs began barking. When he opened his eyes he saw blinking lights, so he got up and looked out the window where he saw a bus stopped on the road in front of his house. The Defendant had a flashlight on him because he "live[d] off grid" and needed a light source close at all times. The Defendant walked outside to see why the bus was stopped.

When he approached the bus, he did not see a tree across the road. He explained that the bus driver's reference to a tree on the road in his testimony was actually sapling that the wind had snapped. He said the sapling was not across the road and had been broken in that manner for the previous two weeks. The Defendant approached the bus and asked the driver what he was doing. In response, Mr. Poindexter looked in the opposite direction from where the Defendant stood, so the Defendant moved to the other side of the bus. Mr. Poindexter, again, turned his face away from the Defendant. This time the Defendant tapped on the window in an attempt to get Mr. Poindexter's attention. The Defendant recalled that Mr. Poindexter moved his line of vision away from the Defendant at least three times before the Defendant tapped on the bus driver's window. The Defendant was concerned with the bus because he "had 12 brand new one day old babies, puppies, and [he] was afraid they were going to get trampled."

The Defendant testified that he only tapped the driver's side window with his flashlight and that he did not touch any other part of the bus. The Defendant saw a younger child in the front of the bus playing with a Game Boy or cell phone and an older kid moving around in the back of the bus. Neither student appeared worried or upset.

The Defendant attempted unsuccessfully to speak with Mr. Poindexter for a few minutes before giving up and returning home. As he started the walk back to his house, he saw Mr. Dobbins arrive. Mr. Dobbins had a chainsaw to cut up the tree and was having difficulty starting the chainsaw. The Defendant turned to go retrieve his chainsaw for Mr. Dobbins to use when Mr. Dobbins's chainsaw engaged. Mr. Dobbins cut the tree in half

and then threw the top half in one direction while the Defendant took the other piece to his woodpile.

About his physical abilities at the time of this incident, the Defendant reported needing a total knee replacement, and thus, he was not capable of running, jumping, or other rigorous activity involving his knee. At the time of trial, the Defendant was on disability due to past work injuries.

After hearing the evidence, the trial court found the Defendant guilty of vandalism under $1,000, a Class A misdemeanor, disorderly conduct, a Class C misdemeanor, and assault, a Class A misdemeanor.

## B. Sentencing

Immediately following the trial, by agreement of the parties, the trial court considered sentencing. The State presented Mr. Poindexter's victim impact statement as follows:

> [T]his whole situation has really affected how I do my route, how I try to protect my kids, and when I see any kind of hostility come toward the bus, now, if I have a place, I close my doors and remove my stop signs, and I drive on.
>
> This little girl that sat in the sixth seat on the right side of the bus, still today, is scared to go down that road. There's a new bus driver driving that bus, a woman, a preacher's wife, and she says that that little girl wants to have prayer before she goes down that road. That has traumatically changed that child's life, and I don't want no other children to go through that, ever.

The Defendant asked the trial court to order a probated sentence because he needed to be at home to care for his dogs and his wife, who was "in some bad shape."

The trial court ordered the following sentences:

> [O]n each Count the Court will sentence him to 11 months 29 days in the Morgan County jail at 75 percent, all time will be suspended to Ethra probation until all fines and costs are paid. He's to pay a $50.00 fine plus the court cost on each count. Defendant should also have no contact with Donald Poindexter and/or his property, and also have no contact with any other Morgan County school buses.

It is from these judgments that the Defendant appeals.

## II. Analysis

On appeal, the Defendant attacks the sufficiency of the evidence supporting his assault conviction and asserts that the trial court erred by sentencing him for Count 2 to eleven months and twenty-nine days because it is a Class C misdemeanor.

## A. Sufficiency of the Evidence

The Defendant asserts that the evidence is insufficient to support his assault conviction because the State failed to prove that Mr. Poindexter's fear of imminent bodily injury was reasonable. He argues that Mr. Poindexter's fear was not reasonable because the Defendant's actions presented a mere possibility of danger rather than a reasonable probability of danger. The State responds that there was sufficient evidence that Mr. Poindexter reasonably feared imminent injury from the Defendant when the Defendant approached with a metal flashlight and beat the glass door of the bus, windshield, and driver's window while threatening Mr. Poindexter. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). In a bench trial, the trial judge, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). The trial judge's verdict carries the same weight as a jury verdict. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978); *see also State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286

S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997).

This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

A person commits assault when he intentionally, knowingly, or recklessly causes bodily injury to another, or intentionally or knowingly causes another to reasonably fear imminent bodily injury. T.C.A. § 39-13-101(a)(1), & (2). Circumstantial evidence is sufficient to establish a victim's fear of imminent bodily injury. *State v. Austin*, No. W2001-00120-CCA-R3-CD, 2002 WL 32755555, at *5 (Tenn. Crim. App. Jan. 25, 2002), *no Tenn. R. App. P. 11 application filed*. "The element of 'fear' is satisfied if the circumstances of the incident, within reason and common experience, are of such a nature as to cause a person to reasonably fear imminent bodily injury." *State v. Whitfield*, No. 02C01-9706-CR-00226, 1998 WL 227776, at *2 (Tenn. Crim. App. May 8, 1998) (citing *State v.Pittman*, No. 03C01-9701-CR-00013, 1998 WL 128801, at *5 (Tenn. Crim. App. Mar. 24, 1998), *no Tenn. R. App. P. 11 application filed*), *perm. app. denied* (Tenn. Dec. 7, 1998).

The evidence, viewed in the light most favorable to the State, showed that the Defendant approached the school bus screaming expletives and wielding a large, metal flashlight. He then began beating on the bus door, front windshield, and the driver's window. During the Defendant's attack, he threatened physical harm to the bus driver. Three students were on the bus at the time and their presence was known to the Defendant as he beat on the door and windows. The students took the Defendant's threats seriously as did Mr. Poindexter who "secured" the bus, notified his boss who contacted the police, and removed the fire extinguisher from the bulkhead in case the Defendant successfully broke out one of the windows.

The Defendant specifically argues that Mr. Poindexter's fear was not reasonable because the bus had safety glass. As the State correctly notes, this court has held that circumstances that suggest the victim experienced fear include a victim summoning the

police for help following the assault, and a victim's attempt at self-defense suggesting fear. *State v. Stallings*, No. E2005-00239-CCA-R3-CD, 2006 WL 2061736, at *20 (Tenn. Crim. App. July 26, 2006), *appeal granted, case remanded on other grounds* (Tenn. Oct. 15, 2007). In this case, Mr. Poindexter notified his boss of his need for help, and Mr. Duncan notified the police. Even though the bus had safety glass, Mr. Poindexter, not knowing the extent of pressure the glass could withstand, secured the fire extinguisher to use to protect the students and himself against an attack if the Defendant gained entry into the bus. In this case, there was sufficient evidence to conclude that the Defendant's conduct created reasonable fear.

Accordingly, we conclude that there was sufficient evidence from which a rational trier of fact could have concluded that the Defendant intentionally caused Mr. Poindexter to reasonably fear imminent bodily injury. The Defendant is not entitled to relief as to this issue.

## B. Sentence

On appeal the Defendant asserts, and the State concedes, that the trial court erred when it sentenced the Defendant to eleven months and twenty-nine days for a Class C misdemeanor, the Defendant's disorderly conduct conviction.

The Defendant was charged with disorderly conduct, a Class C misdemeanor, for causing public annoyance or alarm in a public place by "engag[ing] in fighting or in violent threatening behavior." T.C.A. §39-17-305 (a)(1) & (c). Our sentencing statute provides that a sentence for a Class C misdemeanor can not exceed thirty days. T.C.A. §40-35-111 (e)(3).

Accordingly, the trial court erred when it sentenced the Defendant for a Class C misdemeanor to eleven months and twenty-nine days. Therefore, we remand to the trial court to amend the judgment in Count 2 to reflect a sentence no greater than the statutory thirty-day maximum sentence for a Class C misdemeanor.

## III. Conclusion

Based upon the foregoing, we remand the case for the trial court to enter an amended judgment for Count 2 reflecting a sentence not exceeding the thirty-day maximum. We affirm the trial court's judgments in all other respects.

_____
ROBERT W. WEDEMEYER, JUDGE

9